# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| **TRACIE M. HUNTER** | : | CASE NO. 1:16-cv-561 |
| Plaintiff/Petitioner, | : | JUDGE BLACK |
| v. | : | MAGISTRATE JUDGE LITKOVITZ |
| **HAMILTON COUNTY COURT OF COMMON PLEAS, et al.** | : | **EMERGENCY MOTION FOR STAY OF EXECUTION OF SENTENCE** |
| Defendants | : | |

Pursuant to 28 U.S.C. § 2251, Petitioner Judge Tracie M. Hunter moves for an emergency stay of the execution of her six-month jail sentence – which she is scheduled to begin serving on Friday, May 20, 2016, at 9:00 a.m. – during the pendency of her federal habeas petition. The reasons for this motion are set forth in the attached Memorandum of Law.

                                          Respectfully submitted,

                                          /s/ David A. Singleton
                                          David A. Singleton #0074556
                                          Trial Attorney for Plaintiff
                                          Ohio Justice & Policy Center
                                          215 E. 9th Street, Suite 601
                                          Cincinnati, OH 45202
                                          (513) 421-1108; (513) 562-3200 – fax
                                          dsingleton@ohiojpc.org

                                          /s/Jennifer L. Branch
                                          Jennifer L. Branch # 0038893
                                          *Co-counsel for Petitioner Tracie M. Hunter*
                                          Gerhardstein & Branch Co. LPA
                                          432 Walnut Street, Suite 400
                                          Cincinnati, Ohio 45202
                                          (513) 621-9100; (513) 345-5543 (fax)
                                          jbranch@gbfirm.com

**MEMORANDUM IN SUPPORT**

**I.     Introduction**

On May 18, 2016, the Ohio Supreme Court declined, by a 4-3 vote, to accept jurisdiction of Judge Hunter's discretionary appeal. The dissent by three justices signals their concern that substantial constitutional violations occurred during Judge Hunter's six week trial. As a result of the Ohio Supreme Court's decision, Judge Hunter, whose sentence was stayed during the pendency of her appeals, must report to jail at 9:00 a.m. on May 20, 2016, to begin serving her six-month jail sentence.

Judge Hunter now seeks a writ of habeas corpus in federal court. Under *Hensley v. Municipal Court*, 411 U.S. 345, 349 (1973), Judge Hunter is in custody for purposes of the federal habeas corpus statute even though she has not yet begun serving her term of incarceration. Additionally, as alleged in her habeas petition, Judge Hunter has exhausted her state remedies on the federal constitutional claims she raises.

For the reasons set forth below, including the fact that Judge Hunter is likely to prevail on the merits of her habeas claims, this court should stay Judge Hunter's sentence during the pendency of her habeas proceedings.

**II.    Statement of Facts**

    **A.     Prosecutorial Misconduct During a Long and Contentious Trial**

Petitioner Judge Tracie M. Hunter ("Judge Hunter") is a defendant in an Ohio criminal case pending in the Hamilton County Court of Common Pleas ("County court" or "trial court"). A grand jury indicted Judge Hunter on nine counts alleging that she broke the law in her official capacity as a judge. Judge Hunter's trial lasted almost six weeks, with intense media scrutiny and a "circus atmosphere." T.p. 319.

Throughout the trial, it was clear that the case was hotly contested. However, during rebuttal closing, one of the special prosecutors representing the State of Ohio crossed the line egregiously by engaging in fifty-one instances of misconduct. Despite defense counsel's objections, he repeatedly mentioned children being left in "home[s] where there is sexual abuse" while waiting for judicial orders. He likewise made multiple references to irrelevant acts of violence, ostensibly seeking to tie Judge Hunter to "six kids who beat some guy up and hospitalized him in North College Hill because they were bored," T.p. 3810, and a bailiff she hired "who had been terminated for beating up a child." T.p. 3812-13.

The special prosecutor also appealed to community pressure, saying to the jury: "And I would suggest to you that in this case, there is no question everybody is watching this case. Everybody is watching. And everybody is wondering what is our system of justice about in this community." T.p. 3916. He further stated, "it's time somebody sent a message to our community that we're not going to tolerate this nonsense and I am asking you to do that." *Id.* at 3916–17, 3923.

In addition, the special prosecutor relied on extra-record evidence and unsworn testimony, used absent witnesses to shift the burden of proof, interjected personal opinion about guilt and sentencing, and implied that defense counsel believed Judge Hunter guilty.

### B. Premature Polling Conceals a Divided Jury

The jury began deliberations on the afternoon of Wednesday, October 8, 2014. On the afternoon of Friday, October 10, the jury entered the courtroom and informed the court that it had reached a verdict on Count Six of the indictment. Without announcing

3

what the verdict was, the court purported to poll the jury by asking each juror if the verdict was his or her "true verdict." *Id.* After all jurors answered "yes," the trial judge said: "We are not indicating what the verdict is, but this verdict will be entered. And I'm going to hand this verdict to the court reporter . . . and I'm going to ask him if he would seal the verdict." T.p. at 3994-95. After acknowledging that the jury was "having difficulty in reaching verdicts on the remaining counts" *id.* at 3995, the trial judge gave the jurors an anti-deadlock charge, and instructed the jurors to resume their deliberations after the holiday weekend.

The jury deliberated for a few hours on Tuesday, October 14 before indicating that it could not reach a verdict on the remaining eight counts. After confirming that additional deliberation would be fruitless, the court unsealed the verdict on Count Six and announced publicly that the jury had found Judge Hunter guilty of Having Unlawful Interest in a Public Contract. Subsequently, defense counsel requested to poll the jury, but the trial judge denied the request. The trial judge then discharged the jury.

Following the verdict, defense counsel moved for a new trial based on the trial court's failure to conduct the poll the defense requested after the clerk read the verdict in open court. The defense attached to its motion the affidavits of two jurors who indicated that, had the court polled them after unsealing the verdict and announcing it on October 14, they would have indicated that "guilty" was not their true verdict. Later, the defense filed an affidavit from a third juror who stated she would have repudiated the verdict had the court polled her when the verdict was unsealed and published. The trial court denied the motion for new trial. The trial court sentenced Judge Hunter to six months

4

incarceration in the Hamilton County Justice Center, but the Ohio Supreme Court stayed the sentence.

      **C.**      **Arbitrary Restrictions on Appellate Briefing Followed by a Quick Decision**

The First District assigned Judge Hunter's case to an accelerated calendar, under its Local Rule 11.1.1. Under that rule, briefs shall not exceed fifteen pages. Additionally, the appellant is not afforded an opportunity to submit a reply brief. Regular calendar appeals have a thirty-five-page briefing limit, and the appellant is allowed to reply to the appellee's brief. The First District may remove a case from the accelerated calendar for good cause shown, which includes the "unique, complex, or precedential nature of the issues presented." 1st Dist. Local R. 11.1.1(C)(2).

Soon after receiving the accelerated calendar assignment, Judge Hunter moved to have her case reassigned to the regular calendar. The First District overruled Judge Hunter's motion but increased the page limit from fifteen to twenty-five pages.

After receiving this order, counsel used twenty-one pages to brief the polling issue and an issue of evidence sufficiency that required significant statutory interpretation. However, counsel also discovered fifty-one instances of prosecutorial misconduct within the state's rebuttal argument. As a result, counsel filed a thirty-five page brief with a motion seeking leave to exceed the page limit. The court summarily denied the motion and ordered counsel to file a twenty-five page brief. As a result, counsel cut almost all of the argument regarding prosecutorial misconduct. The First District also denied counsel's motion to file a reply brief.

On January 15, 2016, eleven days after oral argument, the court affirmed Judge Hunter's convictions based on the limited briefing presented. The court finally removed the case from the accelerated calendar so that it could publish its opinion. Thus, the relief Judge Hunter had requested from the onset was only granted when it would have no effect on her ability to fully present her arguments to the court.

The actions of the First District in Judge Hunter's case are consistent with its treatment of appeals in general. Unlike other courts, the First District automatically assigns all cases to the accelerated calendar, and counsel has to petition the court for the case to be moved to the regular calendar. *See* Judge Mark P. Painter and Andrew S. Pollis, *Ohio Appellate Practice*, Section 3:31 (Rev. 2014). A review of all cases filed in the First District between 2013 and 2015 shows that, with the exception of cases that are treated differently by rule or that were dismissed before a scheduling order was issued, all cases were initially assigned to the accelerated calendar, and motions to be removed from the calendar in criminal cases were only granted for appeals of F1 felony convictions.

### D. A Divided Court Denies Review

Following the denial of her appeal, Judge Hunter asked the Ohio Supreme Court for discretionary review of her conviction as well as a continued stay of her sentence. The Ohio Supreme Court issued a stay that remained in effect while it decided whether to review Judge Hunter's case. On May 17 2016, the Ohio Supreme Court, by a 4-3 vote, decided not to accept jurisdiction of Judge Hunter's appeal. As a result, Judge Hunter is scheduled to begin serving her sixth-month sentence on May 20, 2016. Judge Hunter has filed a petition for a writ of habeas corpus in this Court to challenge her conviction and sentence.

## III. Legal Standard

This Court has the power to grant a stay of execution of Judge Hunter's state court sentence because she has filed a petition for writ of habeas corpus. 28 U.S.C. § 2251. To determine whether a stay should be granted, this Court asks:

> 1) whether there is a likelihood [the petitioner] will succeed on the merits . . . ; 2) whether there is a likelihood [the petitioner] will suffer irreparable harm absent a stay; 3) whether the stay will cause substantial harm to others; and 4) whether the injunction would serve the public interest.

*Workman v. Bell*, 484 F.3d 837, 839 (6th Cir. 2007).

## IV. All relevant considerations support the issuance of an emergency stay.

Judge Hunter has raised significant federal constitutional violations in her state court proceedings. As a result, she has a strong likelihood of success and will suffer irreparable harm absent a stay. In addition, her poor health provides further evidence of irreparable harm. Judge Hunter's community connections, and the appearance of injustice throughout this case also weigh in favor of a stay.

### A. Judge Hunter has a strong likelihood of receiving federal habeas relief on her constitutional claims.

Judge Hunter's state court proceedings were marred by denial of a meaningful appeal, prosecutorial misconduct, and denial of a jury verdict. Because each of these errors violated her federal constitutional rights and because the state court either did not decide the issues on the merits or unreasonably applied clearly established federal law, she is likely to succeed on the merits of her habeas petition.

#### 1. Denial of Meaningful Appeal

On appeal, Judge Hunter was unable to present much of her argument about prosecutorial misconduct because of arbitrary restrictions on her counsel's ability to brief

the issues. The appellate court assigned Judge Hunter's case to the accelerated calendar and refused to remove it, resulting in Judge Hunter having only twenty-five pages to brief the issues resulting from a five-week trial and no opportunity to reply in writing to the state's arguments. Judge Hunter challenged the denial of briefing in both the appellate court and the state supreme court. Neither court issued a decision on the merits of her challenge.

Although states are not required to provide appellate review of convictions, when this review is provided, it must comply with the Due Process Clause of the Fourteenth Amendment, including the provision of the effective assistance of appellate counsel. *Evitts v. Lucey*, 469 U.S. 387, 401 (1985); *see Halbert v. Michigan*, 545 U.S. 605 (2005). As the United States Supreme Court has recognized the importance of "[t]he assistance of appellate counsel in preparing and submitting a brief to the appellate court which defines the legal principles upon which the claims of error are based and which designates and interprets the relevant portions of the trial transcript." *Swenson v. Bosler*, 386 U.S. 258, 260, 87 S. Ct. 996, 997, 18 L.Ed.2d 33 (1967). Without providing appellants an opportunity for this assistance, the state's provision of a direct appeal would be "a meaningless ritual." *Douglas*, 372 U.S. at 357. In this case, Judge Hunter's counsel was prevented from briefing a meritorious claim because of the arbitrary briefing restrictions imposed on appeal.

### 2. Prosecutorial misconduct

Although Judge Hunter challenged the pervasive prosecutorial misconduct in state court, the appellate court's unconstitutional restriction on briefing restricted it from deciding the merits of the full claim. The appellate court purported to review portions of

the claim that had to be omitted by claiming that it had reviewed an attached chart of prosecutorial misconduct. However, the court's review was not aided by briefing and case law explaining the significance of the cited instances of misconduct as well as their cumulative effect. As a result, the deference reflected in 28 U.S.C. § 2254(d) should not apply. *See*, *e.g.*, *Cargle v. Mullin*, 317 F.3d 1196, 1205 (10th Cir. 2003) (reviewing cumulative error using pre-AEDPA standards where the state court did not review the evidence holistically). As a result, the sole issue is whether the special prosecutor's statements denied Judge Hunter due process.

The special prosecutor engaged in extensive misconduct throughout his rebuttal closing. The prosecutor's inflammatory remarks were not fleeting or isolated. The fifty-one instances of misconduct included making irrelevant, inflammatory statements; enlisting unsworn statements as evidence; drawing a profusion of absent-witness inferences; relying on personal opinion; impugning the defense's integrity, objections, and belief in its own case; and discussing evidence outside the record. Defense counsel objected to many, if not most, of the most egregious comments. The judge, however, never gave an effective curative instruction nor struck the comments. In fact, by simply repeating the same instruction and not stopping the prosecutor, the Court emboldened the prosecutor to embellish and increase his misconduct.

This misconduct was a violation of Judge Hunter's federal constitutional right to a fair trial because it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). The prosecutor's actions in this case are similar to the actions that necessitated habeas relief in *Washington v.*

9

*Hofbauer*, 228 F.3d 689, 709 (6th Cir. 2000). In *Washington*, the prosecutor engaged in pervasive character attacks throughout closing argument. *Id.* at 709. The court found that these attacks denied the defendant due process because in a close case the prosecutor's comments were prejudicial, extensive, and deliberately made. *Id.* For the same reasons, the special prosecutor's comments denied Judge Hunter due process, and she has a substantial likelihood of success on this claim.

### 3. Denial of a full jury determination

A criminal defendant is entitled to "a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 476-77 (2000) (quoting *United States v. Gaudin*, 515 U.S. 506, 510 (1995)) (alteration in original).

The verdict entered by the trial court was not the true verdict of at least three jurors. The trial court would have learned this if it had polled the jury following the reading of the verdict in open court. However, the trial court refused to poll the jury because it believed that its prior poll attempt, conducted when the verdict remained sealed, was sufficient to determine the decision of the jury. However, the futility of polling juries on an unannounced verdict has been amply demonstrated by several cases in which jurors made errors in filling out the verdict forms that were only discovered upon the announcement of the verdict. *See*, *e.g.*, *United States v. Mears*, 614 F.2d 1175, 1179 (8th Cir. 1980) (Immediately after the verdict was read in open court declaring Mears "not guilty," the jury foreman informed the court that the verdict form was incorrectly signed. The jury then retired for further deliberations, emerging four minutes later with a verdict form finding Mears "guilty."); *Helms v. United States*, 310 F.2d 236,

239-40 (5th Cir. 1962) (after clerk announces "not guilty" verdict in open court, several jurors indicate that their verdict was different, and foreperson acknowledges mistake in signing the wrong verdict form).

Judge Hunter was robbed of her right to be tried by a jury of her peers. Before the verdict against her became final, three members of the jury had decided that "guilty" was not their true verdict. As a result, Judge Hunter's conviction violates the federal constitution.

### B. Judge Hunter will suffer irreparable harm absent a stay.

Without a stay, Judge Hunter will have to serve a sentence stemming from a conviction and an appeal marred by constitutional violations. This fact alone establishes irreparable harm. *See Ward v. Wolfenbarger*, 340 F. Supp. 2d 773, 778 (E.D. Mich. 2004) (recognizing that a "petitioner would suffer irreparable harm each day that he would remain imprisoned in violation of the U.S. Constitution").

This harm is aggravated by the likely effect of incarceration on Judge Hunter's health. Judge Hunter has serious health issues stemming from a car accident when she was a student at Miami University. She is currently under the care of several local doctors. According to her treating physician, Judge Hunter has metal rods in her back, suffers from "significant arthritis of the lower back" and has "stenosis of the cervical spine." (Letter from Dr. Ramona Gaines, December 4, 2014, attached as Exhibit B). As a result of Judge Hunter's condition, Dr. Gaines "cautioned against" Judge Hunter "being in an environment where she would not be free to see the orthopedic specialist and go for physical therapy." *Id.*

Medical care will not be the only issue facing Judge Hunter in jail. Because of the high-profile nature of her case, jailing Judge Hunter will require her to be held in isolation due to security concerns. (Letter from Major Charmaine McGuffey, Hamilton County Justice Center, December 12, 2014, attached as Exhibit C). According to Major McGuffey, who runs the Jail, there would be two options: (1) either put Judge Hunter into an eight-bed pod by herself and "empty the unit of other inmates;" or (2) put her in a special lockdown unit where "she would potentially be spending 23 hours a day inside her cell." *Id.* The second option, which is normally reserved for inmates who pose discipline problems, would be extreme given the severe isolation Judge Hunter would have to experience.

Judge Hunter faces the prospect of aggravating her medical condition and being jailed in isolation to serve a sentence that was imposed in violation of the United States Constitution. Given these facts, Judge Hunter faces irreparable harm absent a stay.

**C.     The stay will cause no harm to others.**

Judge Hunter is not a flight risk. She has strong family, social, and professional ties within Hamilton County. Judge Hunter has lived in Cincinnati her entire life, and her mother, brother, and sister also live in the area. She has been a minister for twenty-five years, and has been the pastor at Western Hills Brethren in Christ Church since 2009. Additionally, Judge Hunter has organized and participated in over 200 prayer walks in high crime areas of the city.

Judge Hunter's community connections show her willingness to remain in Hamilton County. In fact, Judge Nadel obviously took Judge Hunter's strong community ties into account in deciding to allow her to report for sentencing on December 29, 2014,

after she was convicted on October 14, 2014. Judge Nadel's confidence that Judge Hunter will return for sentencing should give this Court confidence that she would report for sentencing should her federal habeas petition be denied.

Judge Hunter poses no danger to the community. The conviction in this case, for a non-violent offense, is her first contact with the criminal justice system as a defendant. In light of the substantial evidence of her good character introduced at the sentencing hearing, nothing in her background suggests that she needs to be incapacitated to protect the public from future harm.

### D. The stay would serve the public interest.

A sizable segment of the community believes that Judge Hunter did not receive a fair trial and was prosecuted for political reasons. This belief has been fostered by the "circuslike" environment of the trial, pervasive negative media coverage of Judge Hunter, and the public statements of both prosecutors and judges involved with the case. This perception was further supported by the appellate court's quick decision on Judge Hunter's appeal. The appeals court decision was rendered with lightning speed, just eleven days after oral argument and one business day before Judge Hunter's scheduled retrial. This perception is also based on the special prosecutors insisting on re-trying Judge Hunter on the remaining counts after the mistrial in October 2014. These charges hung over Judge Hunter's head for an additional fifteen months until the morning of the retrial when the special prosecutors made a surprise announcement they were dismissing all remaining charges.

Regardless of whether this Court ultimately agrees with Judge Hunter on the merits of her claims, this case presents an opportunity for the Court to restore lost

13

confidence in the justice system by giving Judge Hunter a fair opportunity to be heard in federal court—a venue that the community trusts as being above local politics—before she is put in jail.

**V.     Conclusion**

For the reasons set forth above, counsel respectfully requests that this Court grant a stay of Judge Hunter's sentence.

          Respectfully submitted,

/s/ David A. Singleton
David A. Singleton #0074556
*Trial Attorney for Tracie M. Hunter*
Ohio Justice & Policy Center
215 E. 9thStreet, Suite 601
Cincinnati, OH 45202
(513) 421-1108
(513) 562-3200 – fax
dsingleton@ohiojpc.org

/s/Jennifer L. Branch
Jennifer L. Branch # 0038893
*Co-counsel for Tracie M. Hunter*
Gerhardstein & Branch Co. LPA
432 Walnut Street, Suite 400
Cincinnati, Ohio 45202
(513) 621-9100
(513) 345-5543 (fax)
jbranch@gbfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2016, a true and accurate copy of the foregoing Motion was filed electronically. Notice of this filing will be sent to all parties by operation of the court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

/s/ David Singleton
David Singleton #0074556