# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| **TRACIE M. HUNTER**, | : | Case No. 1:16-cv-561 |
| Petitioner, | : | Judge Black |
| vs. | : | Magistrate Litkovitz |
| **ATTORNEY GENERAL OF STATE OF OHIO**, *et al.* | : | **PETITIONER TRACIE M. HUNTER'S SUR-REBUTTAL IN RESPONSE TO RESPONDENT HON. PATRICK DINKELACKER'S SUR-REPLY** |
| Respondents. | : | |
| | : | |

### A. RESPONDENT DINKELACKER MISCONSTRUES JUDGE HUNTER'S FIRST ARGUMENT FOR WHY DE NOVO REVIEW APPLIES.

Misconstruing the first of two arguments Judge Hunter makes for de novo review, Respondent Dinkelacker writes: "Hunter argues . . . that § 2254(d) does not apply because the . . . Court of Appeals stated she waived all but plain error. Based on that statement, she argues that the appellate court failed to address even her preserved prosecutorial misconduct claims, and that § 2254(d) therefore does not apply." Respondent Dinkelacker's Sur-Reply, Doc. 39, PAGEID# 5461. Respondent Dinkelacker's misunderstanding of Judge Hunter's argument, leads him to discuss a Sixth Circuit panel split regarding whether plain error review constitutes an "adjudication on the merits" for § 2254(d) purposes. *Id.* (*comparing Fleming v. Metrish*, 556 F.3d 520, 532 (6th Cir. 2009) (holding that AEDPA deference applies to a claim reviewed for plain error) *with Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) (holding that plain error review does not constitute a review on the merits)).

Contrary to Respondent Dinkelacker's assertion, however, Judge Hunter has not argued that plain error review precludes a court from adjudicating a case on the merits. Rather, her first argument for de novo review is that in order for a court to adjudicate a case

1

on the merits, it must have both "'heard and *evaluated* the evidence and the parties' substantive arguments.'" Petitioner's Reply, Doc. 32, PAGEID# 5407 (quoting *Johnson v. Williams,* 133 S.Ct 1088, 1097 (2013) (emphasis in original). Additionally, with respect to her case specifically, Judge Hunter argues that the court of appeals failed to hear and evaluate her substantive prosecutorial misconduct arguments by forcing her to reduce her original fourteen-page argument addressing fifty-one alleged instances of prosecutorial misconduct into fewer than four pages in order to comply with the court's accelerated calendar briefing order limiting her brief to twenty-five pages. *Id.* Moreover, as Judge Hunter notes in her Reply in discussing her second ground for relief, denial of her constitutional right to a meaningful appeal, the court of appeals would have been able to hear and evaluate her entire prosecutorial misconduct argument had it removed her case from the accelerated calendar and placed it on the regular calendar, which has a thirty-five page briefing limit. *Id.* at PAGEID# 5427.

By raising the question of whether plain error review constitutes an "adjudication on the merits," perhaps Respondent Dinkelacker has provided this Court with an alternative basis for applying de novo review should it choose to follow *Lundgren*, 440 F.3d 754, rather than *Fleming*, 556 F.3d 520. But that is not the argument Judge Hunter has made. And with respect to the argument Judge Hunter actually made – that the First District failed to hear and evaluate her prosecutorial misconduct arguments and therefore did not adjudicate that claim on the merits – Respondent Dinkelacker does not devote a single word of his sur-reply to addressing it.

2

### B. CONTRARY TO RESPONDENT DINKELACKER'S ARGUMENT, JUDGE HUNTER ALTERNATIVELY SHOULD RECEIVE DE NOVO REVIEW – AND ULTIMATELY RELIEF – UNDER § 2254(d)(2).

Judge Hunter argued in her reply that even if the First District's rejection of her prosecutorial misconduct argument constitutes an adjudication on the merits, the court should nonetheless review her claim de novo because the court of appeals based its decision to apply plain error review, and then overrule her claim, on an unreasonable determination of the facts, specifically its finding that "in almost all of the instances of [prosecutorial misconduct] cited by Hunter there was no objection." Doc. 32, PAGEID# 5410 (quoting *State v. Hunter*, 1st Dist. Nos. C-140684, C-140704, C-140717, 2016-Ohio-123, ¶ 35). Addressing Judge Hunter's argument, Respondent Dinkelacker accuses her of "engag[ing] in a semantics debate with the First District Court of Appeals over the meaning of the term 'almost.'" Doc. 39, PAGEID# 5464.

Specifically, citing Merriam-Webster, Respondent Dinkelacker contends that the court of appeals' determination was reasonable because "'almost [means] 'very nearly but not exactly or entirely.'" *Id.* (bracketed word added). However, the problem with Respondent Dinkelacker's argument is that it ignores the obvious: that in reviewing even the preserved claims of prosecutorial misconduct for plain error only, the court of appeals necessarily treated the record as if defense counsel had made <u>no</u> objections to any of the alleged instances of misconduct. The court of appeals could have made clear that it was reviewing for plain error only those instances of alleged misconduct for which defense counsel did not object. But that is not what the court did. Instead, it applied plain error review even for the sixteen instances of misconduct defense counsel preserved for appellate review by objecting.

There was simply no reason for the court of appeals to review those sixteen objections for plain error unless it concluded that objecting to sixteen of fifty-one alleged errors amounted to no objections at all. Indeed, under Respondent Dinkelacker's logic, defense counsel could object to 100 of 300 instances of prosecutorial misconduct and a court could reasonably find that "in almost all" of the instances of misconduct there was no objection, and then review the preserved claims for plain error only. Such a determination would be just as unreasonable and illogical as it is here.

Finally, Respondent Dinkelacker disputes that the court's statement that "in almost all of the instances of [prosecutorial misconduct] cited by Hunter there was no objection" is a finding of fact. *Id.* Instead, Respondent Dinkelacker characterizes it as "merely an observation of marginal significance about what Hunter's counsel did at trial." *Id.* As experienced appellate litigators know, the determination of what standard of review applies is hardly one of marginal significance and can be outcome determinative. *See State v. Gilbert*, No. 12AP–142, 2012 WL 5986641 (Ohio 10th Dist. Ct. App. Nov. 29, 2012) (finding that "a plain error standard applies and is dispositive"); *United States v. Page*, 520 F.3d 545, 548 (6th Cir. 2008) (describing plain error review as a "high burden"). *See also* Jonathan S. Masur & Lisa Larrimore Ouellette, *Deference Mistakes*, 82 U. CHI. L. REV. 643, 658 (2015) ("Commentators agree that standards of review matter . . . ."). In Petitioner's case, the court of appeals' decision to apply plain error review to the sixteen preserved instances of alleged prosecutorial misconduct doomed her argument from the start.

In sum, Respondent Dinkelacker is wrong when he contends that the First District's determination that "in almost all of the instances of [prosecutorial misconduct] cited by Hunter there was no objection." He is wrong because defense counsel objected sixteen times

to improper argument during the rebuttal closing, including to the most egregious of the prosecutor's statements, which accused Judge Hunter of putting children at risk for sexual abuse. And Respondent Dinkelacker is wrong to characterize the court's determination as one of "marginal significance."

### C. RESPONDENT DINKELACKER MISSES THE POINT WHEN HE CLAIMS THAT THE PRESS RELEASE HAMILTON COUNTY PROSECUTOR JOE DETERS ISSUED ON THE EVE OF JUDGE HUNTER'S TRIAL IS IRRELEVANT.

Respondent Dinkelacker claims that "Hunter's repeated references to [Joe Deters'] press release are merely red herrings" and are irrelevant. Doc. 39, PAGEID# 5465. In so arguing, he ignores what is plain and obvious.

In his press release, issued just five days before Judge Hunter's trial began, Deters falsely blamed Judge Hunter for the deaths of two young men, one who shot the other and then was shot to death by a third person. *See* Doc. 32, PAGEID# 5371-5373. Deters speculated in his press release that had Judge Hunter committed one of the young men to DYS, both "might still be alive today." *Id.* at PAGEID# 5372. He closed by stating that "Judge Hunter has consistently said that she is doing this 'for the children.' Well now we have a dead one." *Id.*

Other than to smear Judge Hunter in an attempt to turn potential jurors against her, there was no basis for Deters to issue such a false and inflammatory press release, let alone blame Judge Hunter for the deaths of the two young men. Tellingly, Respondent Dinkelacker does not attempt to justify the press release, for if he tried, he would fail. Instead, he bases his claim that the press release is irrelevant on the fact that Deters, not the special prosecutors he asked to be appointed to handle the prosecution, issued it.

Although Respondent Dinkelacker claims that "there is no basis on which to assert that [the special prosecutors] colluded with [Deters'] office on a smear campaign," and that such a claim "would require 'a wild leap of speculation,'" Doc. 39, PAGEID# 5465, no such leap is required. The special prosecutors misled the jury in opening that Judge Hunter had hired a bailiff who had allegedly physically abused a child and had endangered children by not timely ruling on cases suggests a deliberate attempt to build upon the character attack Deters unleashed upon Judge Hunter in his press release. It does not take a conspiracy theorist to see the connection.

**D. RESPONDENT DINKELACKER'S ARGUMENTS ABOUT THE RELEVANCE OF THE PROSECUTION'S CHARACTER ATTACKS IN OPENING TO ITS MISCONDUCT DURING THE REBUTTAL CLOSING RING HOLLOW.**

Respondent Dinkelacker claims that the special prosecutor, in telling the jury in opening that (1) Judge Hunter had hired a bailiff who had beaten a child and (2) endangered children as a result of alleged delays in issuing rulings, was "simply preview[ing]" or "describing" the evidence the prosecution expected to present. *Id.* at PAGEID# 5467, 5469. What Respondent Dinkelacker ignores, however, is that the purpose of openings is to preview relevant and admissible evidence, not irrelevant and inflammatory information. Here, the accusation that Judge Hunter hired a bailiff who had been fired for assaulting a child or endangered children by allegedly not ruling on cases promptly, were completely false and irrelevant to any of the charges she faced. The only purpose for those statements was to plant in the jurors' minds the idea that Judge Hunter did not care about the very children she was sworn to serve. Thus, the special prosecutor was not "simply previewing" the evidence, as Respondent Dinkelacker claims, but was rather trying to destroy Judge

Hunter's character by injecting inflammatory, false, and irrelevant information where it did not belong.

Respondent Dinkelacker goes on to inaccurately claim that there was evidence to support the specious allegations against her bailiff in the prosecutor's opening. Doc. 39, PAGEID# 5467-68 Respondent Dinkelacker then selectively quotes from the transcript of Judge Hunter's bailiff's testimony where he answers leading questions about what Judge Hunter knew from media reports that he was reportedly terminated for a physical confrontation with a youth. (*Id.*). Respondent Dinkelacker omitted the prior testimony from the bailiff that he resigned and was not fired. Transcript Doc. 13-29 PAGEID No. 4044-45.

Lastly, Respondent Dinkelacker contends that defense counsel's failure to object to the statements suggesting that Judge Hunter did not care about, and actually endangered, children is incompatible with her argument that similar remarks by the special prosecutor during the rebuttal closing prejudiced her. Doc. 39 at PAGEID# 5467, 5470. Respondent Dinkelacker then argues that defense counsel's failure to object to these statements in opening constitutes procedural defaults regarding any complaints about these specific statements. *Id.* at n.5, n.6. Both points are misguided.

First, with respect to his procedural default argument, Respondent Dinkelacker fundamentally misunderstands the relevance of the special prosecutor's character attacks in opening statement to this court's assessment of whether the prosecutor committed reversible misconduct during his rebuttal closing by making similar remarks. To be clear, Judge Hunter has not raised as a ground for relief a prosecutorial misconduct claim based on what occurred during opening statement. If she had, she agrees that any such claim would be procedurally defaulted because the defense did not object to the prosecutor's remarks in opening.

Rather, Judge Hunter discussed these statements in her reply because they are relevant to one of the factors this Court must consider in determining whether the prosecution's misconduct during the rebuttal closing denied Judge Hunter a fair trial: "whether the remarks were deliberately or accidentally made." *Frazier v. Huffman*, 343 F.3d 780, 791 (6th Cir. 2003).The fact that the special prosecutor tried to slam Judge Hunter's character in opening by portraying her as dangerous to children tends to show that when the prosecutor made those same statements during the rebuttal closing they were intentional, not accidental. Therefore, the procedural default doctrine does not apply here. Indeed, if Respondent Dinkelacker really believed that it did, then he would not have buried his argument in footnotes.

Second, defense counsel's failure to object to the prosecutor's character attacks in opening does not mean that the defense viewed the statements as harmless. In fact, defense counsel may very well have decided not to object in opening precisely because the statements were prejudicial and he did not want to highlight them for the jury. *See Robinson v. United States*, 625 Fed.Appx 721, 724 (6th Cir. 2015) (observing that defense counsel "faced a choice: say nothing and hope the jury missed the passing reference, or object and thereby risk that the instructional cure would be worse than the disease."); *Bradford v. Timmerman-Cooper*, No. 5:07-CV-01915, 2008 WL 3992142 (N.D. Ohio Aug. 25, 2008) (treating "defense counsel's failure to object as a tactical decision, inasmuch that objections would only serve to highlight negative testimony . . . .").

Third, and most significantly, defense counsel *did* object to the most inflammatory and prejudicial of the prosecutor's character attacks during the rebuttal closing, including the unfounded, repeated accusations that children were being sexually abused because of her

alleged delays in deciding cases. By objecting during the rebuttal closing, defense counsel was informing the court that the prosecutor's statements were improper and harmful. Thus, Judge Hunter's position that the prosecutor's rebuttal closing "'so infected her trial with unfairness so as to make the resulting conviction a denial of due process,'" Doc. 32, PAGEID# 5421 (quoting *Darden v. Wainwright*, 477 U.S. 168, 171 (1986)), is easily squared with defense counsel's failure to object to portions of the prosecutor's opening statement that unfairly maligned Judge Hunter.

### E. RESPONDENT DINKELACKER'S CLAIM THAT JUDGE HUNTER HAS FAILED TO REFUTE RESPONDENTS' HARMLESS ERROR ARGUMENT LACKS MERIT.

Finally, Respondent Dinkelacker argues that "[e]ven though not acquitted, the jury's failure to convict Hunter of the remaining eight charges strongly suggests that the challenged remarks concerning those charges did not prejudicially affect the jury." Doc. 39, PAGEID# 5473. This is wrong.

Regardless of whether some of the prosecutor's objectionable statements during the rebuttal closing addressed issues relevant to the eight charges for which Judge Hunter was not convicted, there is no question that repeatedly blaming Judge Hunter for children being sexually abused, accusing her of caring more about protecting the identities of violent youth than the victims those youth assaulted, and telling the jury that she had hired a bailiff who had beaten a child, had nothing whatsoever to do with any of the charges Judge Hunter faced. Those comments were irrelevant to the so-called "backdating" charges. Those remarks were not probative of any of the elements of the credit card counts. And those remarks were not germane to either of the two counts charging her with Having Unlawful Interest in a Public

9

Contract. The reason why Respondent Dinkelacker does not explain the relevance of those inflammatory statements is because he cannot.

Additionally, Respondent Dinkelacker's argument that the absence of convictions on the other eight counts "strongly suggests that the challenged remarks . . . did not prejudicially affect the jury," Doc. 39, PAGEID# 5473, rests on a false premise: that the hung counts were strong and should have resulted in convictions. In actuality, and for the reasons discussed in Judge Hunter's Reply, Doc. 32 at PAGEID# 5364-5368, each of those counts was unfounded and unsupported by the evidence at trial. If anything, the jury should have acquitted Judge Hunter of those charges. In fact, the jury's failure to do so shows that the prosecutor's inflammatory character attacks were prejudicial, not harmless.

## CONCLUSION

For the above reasons, and for the reasons stated in Petitioner's Reply, the special prosecutor's rebuttal closing so infected Judge Hunter's trial with unfairness so as to make her resulting conviction a denial of due process. Therefore, this Court should grant the writ Judge Hunter seeks and reverse her conviction.

    Respectfully submitted,

    /s/ David A. Singleton
    David A. Singleton, #007456
    *Trial Attorney for Petitioner*
    Ohio Justice & Policy Center
    215 E. 9th Street, Suite 601
    Cincinnati, Ohio 45202
    513-421-1108
    513-562-3200 (fax)
    dsingleton@ohiojpc.org

                                                /s/Jennifer L. Branch
                                                Jennifer L. Branch # 0038893
                                                *Co-counsel for Petitioner*
                                                Gerhardstein & Branch Co. LPA
                                                441 Vine, Suite 3400
                                                Cincinnati, Ohio 45202
                                                (513) 621-9100
                                                (513) 345-5543 (fax)
                                                jbranch@gbfirm.com

## CERTIFICATE OF SERVICE

I certify that on February 10, 2017, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the court's electronic filing system.

                                                /s/David A. Singleton
                                                David A. Singleton