IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TRACIE M. HUNTER, | : | Case No. 1:16-cv-561 |
| Petitioner, | : | Judge Black |
| vs. | : | Magistrate Judge Litkovitz |
| ATTORNEY GENERAL OF STATE OF OHIO, *et al.* | : | PETITIONER'S RESPONSE TO RESPONDENTS' OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION |
| Respondents. | : | |

### A. THE SPECIAL PROSECUTOR'S REPEATED REMARKS BLAMING JUDGE HUNTER FOR CHILDREN BEING SEXUALLY ABUSED WERE IMPROPER, INFLAMMATORY AND SUFFICIENTLY HARMFUL TO DENY HER A FAIR TRIAL.

In their objections to the magistrate's Report and Recommendation, Respondents argue several points in defense of the special prosecutor's statements blaming Judge Hunter for allegedly allowing children to be sexually abused. Specifically, Respondents contend that (1) defense counsel invited the remarks; Respondents' Objections, Doc. 46, at PAGEID# 5609; (2) the comments were "reasonable inferences from the evidence;" *id.*. at PAGEID# 5610; and (3) the remarks were appropriate given "the wide latitude" prosecutors receive in closing argument; *id.* at PAGEID# at 5610-11. Respondents are wrong.

### 1. Defense counsel did not invite the comments accusing Judge Hunter of allowing children to be sexually abused.

Citing the "invited response doctrine," Respondents contend that the special prosecutor made the comments regarding sexual abuse "in response to defense counsel's pejorative remarks

about assistant prosecutor Katie Pridemore and the prosecutor's office generally." *Id.* at PAGEID # 5609. In so arguing, Respondents misapply the invited response doctrine.

Judge Hunter has already extensively briefed her explanation for why the invited response doctrine does not apply to any of the statements the magistrate found inflammatory, including those blaming Judge Hunter for children being sexually abused, *see* Petitioner Tracie M. Hunter's Objections to Magistrate Judge's Report and Recommendation ("Petitioner's Objections"), Doc. 47, at PAGEID# 5632-46, and fully incorporates those arguments here. The following bullets summarize the arguments Judge Hunter made in objecting to the magistrate's application of the invited response doctrine:

- The invited response doctrine does not apply where, as here, the prosecutor raised the issue of children suffering for the first time not during the rebuttal closing but during opening, ***before*** defense counsel had the opportunity to tell Judge Hunter's theory of defense to the jury; thus, under those circumstances, it is inaccurate and unfair to conclude that the special prosecutor made the remarks at issue in response to anything defense counsel said during the closing. *See id.* at PAGEID# 5634-35.

- The invited response doctrine only applies where defense counsel has engaged in misconduct. *United States v. Young,* 470 U.S. 1, 19 (1985). But in Judge Hunter's case, defense counsel engaged in no such misconduct by arguing that the charges were vindictive and politically motivated because there was evidence in the record to support such a defense theory. *See* Petitioner's Objections at PAGEID# 5637-42.

- Even if the invited response doctrine applies, the special prosecutor's references to children being sexually abused went far beyond what was necessary to "right the scale," given that the prosecutor made three references in the rebuttal closing to children being sexually abused without a shred of evidence to support his contention, two of which drew defense objections. *See id.* at PAGEID# 5642-46.

In sum, defense counsel did not invite the special prosecutor's remarks blaming Judge Hunter for allegedly permitting children to languish in homes where they were being sexually abused. Those remarks were made not in response to defense counsel's closing, and were not justified by anything defense counsel said. And in any event, the special prosecutor's over-the-top comments went far beyond what was necessary to "right the scale."

   **2. The Special Prosecutor's Argument that Children Were Sexually Abused Because of Judge Hunter's Alleged Delays in Deciding Cases Was Not a Reasonable Inference from the Evidence.**

Respondents contend that the special prosecutor "reasonably inferred that the consequences of Hunter's delay included the possibility that a child living in a home with sexual abuse would not be removed in a timely manner" because "abuse takes many forms, including sexual, physical, and emotional," Respondent's Objections at PAGEID # 5611. Once again, Respondents are wrong.

The fact that abuse may take many forms does not mean that Judge Hunter had any sexual abuse cases on her docket. There was no testimony as to the nature of the abuse and neglect cases Judge Hunter handled, nor was there any testimony that any of the cases that Judge Hunter was allegedly slow to decide involved sexual abuse. Absent such evidence, neither the prosecutor nor

3

the jury could "reasonably infer" that children were being sexually abused as a result of Judge Hunter's alleged delays in deciding cases. While prosecutors are allowed to argue reasonable inferences based on the evidence, they are not permitted to invent facts out of whole cloth, which is precisely what the special prosecutor did by arguing, with zero evidence to support his claim, that Judge Hunter's alleged tardiness in ruling upon cases caused children to be sexually victimized.

Nevertheless, Respondents cite *Slagle v. Bagley*, 457 F.3d 501 (6th Cir. 2005), to support their assertion that the special prosecutor did nothing wrong by blaming Judge Hunter for causing children to be sexually abused. There, the prosecution argued that Slagle removed his shoes before entering the decedent's home because "one can hear another walking in another room with floorboards because the floorboards will creak." *Id.* at 519. Slagle argued that this statement was improper because there was no evidence that the floorboards creaked. *Id.* at 510. The Sixth Circuit rejected Slagle's argument and concluded that the prosecutor's comment was proper because it "relied only on common knowledge" and concerned the defendant's conduct, specifically why he removed his shoes when he entered the decedent's residence. *Id.* 519.

*Slagle* is inapposite. While it may be common knowledge that, as a general proposition, it is harder to hear a person walking on a floor if he first removes his shoes, the composition of a juvenile court judge's docket at any given time is not a matter of common knowledge. Moreover, while an argument that floors creak would not arouse the passions of the jury, accusing Judge Hunter of allowing children to remain in homes where they were being sexually abused—when such alleged sexual abuse is not related to the charges the judge faced—posed a significant risk of

4

inflaming the jurors and persuading them to convict based on their belief that she was a bad judge who needed to be convicted and removed from office, not on the evidence relevant to the charges.

### 3. The wide latitude prosecutors enjoy during closing does not allow them to do what the special prosecutor did during the rebuttal closing.

Respondents are correct that prosecutors normally enjoy "wide latitude" during closing arguments. *See* Respondent's Objections at PAGEID # 5611-12, 5614-15. But such latitude does not permit what the special prosecutor did here: blame Judge Hunter for allowing children to be sexually abused, an accusation irrelevant to the charges she faced that lacked any factual basis whatsoever.

Respondents deny that the special prosecutor "intend[ed] to inflame the passions or prejudices of the jury. *Id.* at 6, PAGEID # 5612. But there was no reason for the prosecutor to tell the jury that children were being sexually abused on Judge Hunter's watch other than to try to persuade the jury to convict so she could be removed from office. Despite there being no evidence that Judge Hunter's alleged delays in deciding cases involved children who were sexually abused, the special prosecutor fought to get this accusation before the jury, not once but three times. The repetition of this argument, for which no evidence existed to support it, underscores the prosecution's true motive: turn the jury against her based on highly inflammatory and factually unsupported accusations that were irrelevant to the charges Judge Hunter faced. *Martin v. Parker*, 11 F.3d 613, 616–17 (6th Cir. 1993) (noting that "cases involving sexual abuse exert an *almost irresistible pressure* on the emotions of the bench and bar alike" and that therefore "a strict adherence to the rules of evidence and appropriate prosecutorial conduct is required to ensure a fair trial") (emphasis added).

Indeed, Respondents' admission that the remarks about sexual abuse "were relevant to the kinds of serious problems caused by Hunter," Respondents' Objections at PAGEID# 5612, proves her point: that the prosecution's motive in blaming Judge Hunter for children being sexually abused was to convince the jury that she was a bad judge who needed to be convicted and removed from office. Regardless of what Respondents mean by "serious problems," Judge Hunter was on trial for the charges specified in the indictment, not the so-called "serious problems" Respondents refer to as justification for telling the jurors that Judge Hunter was responsible for children being sexually abused.

**B. THE SPECIAL PROSECUTOR'S OTHER INFLAMMATORY AND IMPROPER STATEMENTS CONTRIBUTED TO THE DENIAL OF JUDGE HUNTER'S RIGHT TO A FAIR TRIAL.**

With respect to the two additional remarks the magistrate found inflammatory—the special prosecutor's statements that (1) Judge Hunter hired a bailiff who had previously been terminated from Juvenile Court employment for engaging in a physical altercation with a child; and (2) Judge Hunter sought to prevent the media from learning the identities of six youth who beat a homeless man because they were bored—Respondents argue that both comments were proper because there was evidence in the record to support each point. Respondent's Objections at PAGEID# 5613-14. What Respondents ignore, however, is that the evidence was irrelevant and never should have been heard in the first place. Accepting the prosecution's argument would allow prosecutors to pile one abuse upon another with impunity. Such misconduct should not be condoned.

*Gumm v. Mitchell,* 775 F.3d 345 (6th Cir. 2015), a case where the Sixth Circuit affirmed the grant of habeas relief on prosecutorial misconduct and other grounds, is instructive. There, Gumm was charged with the kidnapping, attempted rape, and murder of a ten year old boy. *Id.* at

6

352. During the trial, the prosecutor elicited from a reluctant witness that Gumm had once claimed to have "fucked [a] horse." *Id.* at 355. During the rebuttal closing, the prosecution argued that "[s]ex is the motive in this particular case and it fits the profile. * * * Sex with a woman; sex with a man . . .; *sex with animals*, according to [a witness]; and sex with little boys." *Id.* (emphasis in original).

The Sixth Circuit agreed with the district court that the prosecution committed misconduct by first eliciting testimony that "was far more prejudicial than probative," and then using it in the rebuttal closing "to depict [Gumm] as an overly–confident sexual deviant who has a propensity to have sex with little boys and commit crimes such as those in this case." *Id*. at 382. Accordingly, one of the lessons from *Gumm* is that prosecutors lack free rein to make inflammatory character attacks in closing just because there may be testimony in the record to support them.

Here, the special prosecutor's remarks about Judge Hunter's bailiff and the comment about her attempt to keep the media from knowing the names of the six youth who beat a homeless man had a common purpose: to smear Judge Hunter's character and turn the verdict into a referendum on whether the jurors thought she was a bad judge. Whether or not Judge Hunter's bailiff had been previously terminated for striking a child had absolutely nothing to do with any of the charges she faced. Likewise, the fact that the children whose identities Judge Hunter sought to safeguard had been charged with beating a homeless man because they were bored was utterly irrelevant to her charges and was far more prejudicial than probative. Thus, the magistrate judge correctly concluded that these statements were improper and inflammatory, though she subsequently erred in her analysis of the harm those— and the statements about sexual abuse—caused.

## C. THE COURT SHOULD REVIEW JUDGE HUNTER'S PROSECUTORIAL MISCONDUCT CLAIM DE NOVO.

To "preserve the record and their appellate rights," Respondents, in a short paragraph devoid of analysis, "object[ed] to any determination, assumption or implication that the state appeals court's application of plain error review did not constitute a ruling on the merits, or that the deferential standard of review in § 2254(d) did not apply for any other reason." Respondents' Objections at PAGEID# 5617. For the reasons Judge Hunter has already argued in her objections, she maintains that the court should review her non-defaulted prosecutorial misconduct claims de novo. *See* Petitioner's Objections at PAGEID# 5628-32.

*Stewart v. Trierweiler*, No. 16-2149, --- F.3d ---, 2017 WL 3470394 (6th Cir. Aug. 17, 2017), does not alter Judge Hunter's position. In *Stewart*, a panel of the court acknowledged the dispute within the Sixth Circuit on the question of whether plain error review constitutes a merits ruling for purposes of triggering AEDPA deference, *id.* at *4, an issue the magistrate judge wrestled with in her analysis of the standard of review. *See* Report and Recommendation, Doc. 41, at PAGEID# 5504-06.

The dispute principally involves two opinions: *Fleming v. Metrish*, 556 F.3d 520 (6th Cir. 2009), and *Frazier v. Jenkins*, 770 F.3d 485 (6th Cir. 2014). In *Fleming*, a split panel of the court, applied AEDPA's deferential standard of review to a claim that the state court had erroneously reviewed for plain error only. *Fleming*, 556 F.3d 520, 530-32. However, the dissenting judge wrote that "the controlling rule in this circuit is that no deference is due under AEDPA where a state court reviews a claim for plain error only, regardless of whether the court's plain-error inquiry may have delved into the merits of the claim." *Id.* at 538-44 (Clay, J., concurring in part and dissenting in part) (citing numerous cases, including *Thompkins v. Berghuis*, 547 F.3d 572, 590

8

(6th Cir. 2008) (declining to give deference to state court's plain-error review of petitioner's prosecutorial misconduct claim); *Jells v. Mitchell*, 538 F.3d 478, 511 (6th Cir. 2008) ("The [state] court's plain-error review is not considered a review on the merits . . . ."); *Benge v. Johnson*, 474 F.3d 236, 246 (6th Cir. 2007) (applying *de novo* review to *Strickland* claim which state court reviewed for plain error); *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) (holding that a state court's plain-error review does not receive AEDPA deference because "[p]lain error analysis is more properly viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits.")).

But in *Frazier*, a different panel split on the question of whether a state court's plain-error review is entitled to AEDPA deference. Citing *Lundgren*, 440 F.3d 754, and other cases, the majority noted that "[w]e have repeatedly held that plain-error review is not equivalent to adjudication on the merits, which would trigger AEDPA deference." *Frazier v. Jenkins,* 770 F.3d 485, 496 n.5  In his concurring opinion, Judge Sutton, citing *Fleming*, disagreed with the majority that a state court's plain-error review is not entitled to AEDPA deference. *Id.* at 505-07 (Sutton, J. concurring in part and concurring in the judgment). And as recently as April 2017, another Sixth Circuit Panel called into question *Fleming's* conclusion that a state court's plain-error review amounts to adjudication on the merits. *See Bickham v. Winn*, No. 2174, 2017 WL 1661419, * 2 (6th Cir. Apr. 3, 2017).

However, in *Stewart v. Trierweiler*, No. 2149, 2017 WL 3470394, * 4 (6th Cir. Aug. 14, 2017) another panel of the court, in an opinion Judge Sutton authored, held that AEDPA deference applies to a state court's plain-error review (citing *Fleming v. Metrish*, 556 F.3d 520, 531). In attempting to resolve what it called the "Janus-like dilemma" caused by *Fleming* and *Frazier*, the

9

*Stewart* panel "look[ed] to the oldest decision on point. . . . That is *Fleming.*" *Id*. (citation omitted). But in concluding that *Fleming* controlled, the *Stewart* panel ignored older on-point authorities precedent such as *Jells v. Mitchell*, 538 F.3d 478, *Benge v. Johnson*, 474 F.3d 236, and *Lundgren v. Mitchell*, 440 F.3d 754, that held that plain-error review does not constitute a merits adjudication requiring AEDPA deference. If anything, *Stewart* adds to the confusion and does not resolve the issue.

Ultimately, the en banc court will need to wade into the *Fleming-Frazier-Stewart* thicket and settle the dispute those cases have generated. In the meantime, this court should rule that *Stewart* does not apply the inflammatory statements the magistrate found improper because defense counsel objected to those comments. Instead of ruling upon those comments individually, the appellate court packaged them together with the unobjected-to claims of prosecutorial misconduct and then applied the more demanding plain error standard to both the preserved and unpreserved claims.

Additionally, Judge Hunter has offered another avenue for the court to review her prosecutorial misconduct claim de novo. As Judge Hunter argued in her Reply, Doc. 32, at PAGEID# 5360, and in her Objections to the Report and Recommendation, Doc. 47, PAGEID# 5628-32, the state appellate court made an unreasonable determination of the facts in concluding that she "waived all but plain error" with respect to her prosecutorial misconduct claim even though her lawyer objected sixteen times during the special prosecutor's rebuttal closing, including to the statements the magistrate judge found inflammatory and improper. Thus, Judge Hunter's non-defaulted prosecutorial misconduct claims are entitled to de novo review under 2254(d)(2). *See* Petitioner's Objections at PAGEID# 5629-32 (citing cases supporting Judge Hunter's

argument that the magistrate erred in concluding that 2254(d)(2) did not provide a basis for de novo review).

Significantly, neither *Fleming* nor *Stewart* address Judge Hunter's 2254(d)(2) argument. Accordingly, for the reasons Judge Hunter argued in her Reply and Objections, the court should conclude that the First District Court of Appeals triggered de novo review by making the unreasonable factual determination that she "waived all but plain error" when in fact she objected to the most egregious of the special prosecutor's misconduct.

Finally, even if this court rules that the state court's plain-error review of Judge Hunter's is entitled to AEDPA deference, it should nonetheless grant relief. The special prosecutor's inflammatory attacks on Judge Hunter's character—which the prosecutor began in opening and hammered home in the rebuttal closing— focused the jurors' attention not on the question of Judge Hunter's innocence or guilt on the charges but instead on whether they liked her as a person and/or whether she should be removed from office. There was no reason for the special prosecutor to repeatedly tell the jury that Judge Hunter was responsible for children languishing in homes where they were being sexually abused, or inform the jury that Judge Hunter's first act in office was to hire a bailiff who had been fired for beating a child many years ago, or state that Judge Hunter sought to protect the identities of six youth who beat a homeless man because they were bored, other than to try her character, not her charges. Thus, the special prosecutor's improper and inflammatory remarks during the rebuttal closing "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly v. DeChristoforo,* 416 U.S. 637 (1974)).

Respectfully submitted,

| | |
|---|---|
| /s/ David A. Singleton<br>David A. Singleton #0074556<br>*Trial Attorney for Petitioner*<br>Ohio Justice & Policy Center<br>215 E. 9th Street, Suite 601<br>Cincinnati, OH 45202<br>(513) 421-1108; (513) 562-3200 (fax)<br>dsingleton@ohiojpc.org | /s/ Jennifer L. Branch<br>Jennifer L. Branch #0038893<br>*Co-counsel for Petitioner*<br>Gerhardstein & Branch Co. LPA<br>441 Vine Street, Suite 3400<br>Cincinnati, OH 45202<br>(513) 621-9100; (513) 345-5543 (fax)<br>jbranch@gbfirm.com |

## **CERTIFICATE OF SERVICE**

I certify that on August 31, 2017, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the court's electronic filing system.

/s/David A. Singleton
David A. Singleton