| | | |
|---|---|---|
| TRACIE M. HUNTER, | : | Case No. 1:16-cv-561 |
| | : | |
| Petitioner, | : | District Judge Timothy S. Black |
| | : | Magistrate Judge Karen L. Litkovitz |
| vs. | : | |
| | : | |
| HAMILTON COUNTY COURT OF | : | |
| COMMON PLEAS, *et al.*, | : | |
| | : | |
| Respondents. | : | |

## DECISION AND ENTRY:
## (1) ADOPTING THE REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE;
## (2) OVERRULING ALL OBJECTIONS;
## (3) DISMISSING TRACIE M. HUNTER'S PETITION WITH PREJUDICE;
## (4) VACATING THE STAY OF HUNTER'S SENTENCE; AND
## (5) TERMINATING THE CASE IN THIS COURT

This case is before this federal court on a petition for a writ of habeas corpus filed by counsel for former state court judge Tracie M. Hunter ("Petitioner" or "Hunter"). Hunter asserts that she was denied her fundamental right to a fair trial in the Hamilton County Court of Common Pleas, in violation of her rights under the United States Constitution and federal law.

This federal habeas case is not a retrial of Hunter's conviction, nor is it a reconsideration of Hunter's sentence. Whether a six-month jail sentence is warranted is not for this Court to decide. Only the state court can impose or amend a sentence for a state-court conviction.

A federal court's habeas review of a state court conviction is limited. Generally speaking, the federal court must decide whether the state court was wrong to conclude that Hunter received the fair trial that every criminal defendant is entitled under the United States Constitution. If Hunter received a fair trial as a matter of law, the federal court's inquiry is complete.

Early in these proceedings, Hunter's attorneys stated: "Regardless of whether this [federal] Court ultimately agrees with Judge Hunter on the merits of her claims, this case presents an opportunity for the [federal] Court to restore lost confidence in the justice system by giving Judge Hunter a fair opportunity to be heard in federal court—a venue that the community trusts as being above local politics—before she is put in jail." (Doc. 3 at 13–14). This federal court now discharges that duty with this decision.

## I. BACKGROUND

The Report and Recommendation provides a thorough recitation of the procedural posture in this case. (Doc. 41 at 2-10). The following is a brief summary of the relevant background:

### A. State Court Trial

In January 2014, the Hamilton County grand jury returned an eight-count indictment, charging Petitioner Tracie M. Hunter with the following felony offenses: two counts of tampering with evidence, in violation of Ohio Rev. Code § 2921.12(A)(2) (Counts 1 and 3); two counts of forgery, in violation of Ohio Rev. Code § 2913.31(A)(2) (Counts 2 and 4); two counts of having an unlawful interest in a public contract, in violation of Ohio Rev. Code § 2921.42(A)(1) (Counts 5–6); and two counts of theft in

office, in violation of Ohio Rev. Code § 2921.41(A)(2) (Counts 7–fo8).  (Doc. 12, Ex. 1).

The grand jury also returned a second indictment, charging one additional felony count of

misuse of credit cards, in violation of Ohio Rev. Code § 2913.21(B)(2) (Count 1 of

Indictment #2).  (*Id.*, Ex. 2).  The two indictments were consolidated for purposes of trial.

A jury trial commenced with opening statements on September 10, 2014.  (Doc.

13-13).  The trial lasted approximately four-weeks, with jury deliberations beginning on

October 8, 2014.  (Doc. 13-31).  Ultimately, the jury was unable to reach a unanimous

verdict on any count except for Count 6 of the Indictment.  As to Count 6, the jury found

Hunter guilty.[1]

On December 5, 2014, the state trial judge sentenced Hunter to serve six-months

in jail, followed by one year of community control, and payment of court costs.  (Doc.

12, Ex. 26).

### B.  State Appellate Proceedings

Following her conviction, Hunter filed an appeal in the Ohio Court of Appeals,

First Appellate District.  (Doc. 12, Exs. 30, 31, 32).  On appeal, Hunter argued that the

state trial court erred in three ways: (1) by denying her motion for judgment of acquittal;

(2) by refusing to poll the jury after the verdict was unsealed and announced in open

court; and (3) by failing "to meaningfully cure the prosecution's pervasive misconduct

---

[1] The Report and Recommendation includes the thorough recitation of the evidence presented at trial as to Count 6, as stated by the Ohio Court of Appeals for the First Appellate District. (Doc. 41 at 3–6).  <u>This federal court must presume that the state court's determination of the facts is correct, unless the petitioner shows otherwise by clear and convincing evidence.</u>  28 U.S.C. § 2254(e).

during its rebuttal closing argument." (*Id*., Ex. 49). The Ohio Court of Appeals affirmed the state trial court's judgment. (*Id*., Ex. 56).

Hunter then appealed to the Supreme Court of Ohio. (*Id*., Ex. 58). On May 18, 2016, the Supreme Court of Ohio declined to accept jurisdiction of Hunter's appeal. (*Id*., Ex. 62).

## C. Federal Habeas Corpus Petition

On May 19, 2016, Hunter commenced this federal case by filing a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254. (Doc. 1). Specifically, Hunter presents the following three grounds for relief in her habeas petition:

> **Ground One:** Denial of the Fifth and Fourteenth Amendment[] right to due process resulting from extensive prosecutorial misconduct. ("Ground One").
>
> **Ground Two:** Denial of the right to due process under the Fourteenth Amendment to the United States Constitution as a result of the state court of appeals' abuse of its accelerated calendar to restrict briefing in complicated cases. ("Ground Two").
>
> **Ground Three:** Denial of the right to a jury trial under the Sixth and Fourteenth Amendments because of the trial court's failure to poll the jury upon announcement of the verdict in open court. ("Ground Three").

(Doc. 1 at 3-9).

This Court granted Hunter's motion to stay her sentence until this federal case had resolved in this Court. (Doc. 4).[2]

---

[2] Similarly, the Supreme Court of Ohio previously stayed Hunter's sentence during the pendency of her state court appeals. (Doc. 1 at 3, ¶10).

Pursuant to this Court's Order of General Reference, this case was referred to United States Magistrate Judge Karen L. Litkovitz. The Magistrate Judge reviewed the pleadings, including Hunter's petition, the Respondents' answers, Hunter's reply, Respondents' sur-reply, and Hunter's sur-rebuttal. (Docs. 1, 12, 27, 32, 39, 40). On May 9, 2017, the Magistrate Judge submitted a Report and Recommendation to this District Judge, recommending that Hunter's petition for a writ of habeas corpus be denied with prejudice. (Doc. 41).

Petitioner filed extensive objections to the Report and Recommendation. (Doc. 47).[3] All of the objections, however, focus entirely on her first ground for relief. (*Id.*)

Respondents also filed objections, despite the Magistrate Judge's recommendation that the habeas petition be denied. (Doc. 46). Specifically, Respondents' objections are to the Magistrate Judge's finding that the special prosecutor made certain improper statements during his rebuttal closing argument—albeit none warranting habeas relief. (*Id.*)

Additionally, Petitioner and Respondents have each filed responses to the opposing parties' objections to the Report and Recommendation. (Docs. 52, 53).

This case is ripe for this Court's consideration.

---

[3] Although Hunter's counsel had already timely filed extensive objections to the Report and Recommendation, Petitioner herself, on October 23, 2017, filed a "pro se motion for leave of court in the interest of justice to retain new legal counsel to amend or supplement pleadings filed in objection to the May 9, 2017 Report and Recommendation of the Magistrate Judge." (Doc. 54). As Hunter is not *pro se* in this case, the Court orders that Petitioner's untimely and improper motion be stricken from the docket.

## II.  STANDARD OF REVIEW

### A.  District Court's Review of the Report and Recommendation

Pursuant to 28 U.S.C. § 636(b), the District Court may refer dispositive motions, including motions for post-conviction relief, to a United States Magistrate Judge.  Upon such reference, the Magistrate Judge must submit a Report and Recommendation, providing a recommended disposition of the motion, as well as proposed findings of fact. *Id.*; Fed. R. Civ. P. 72(b).  Within fourteen days of service of a Magistrate Judge's Report and Recommendation, the parties may serve and file specific written objections to the Report and Recommendation, for the District Judge's consideration.  *Id.*

If objections are filed, the District Judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to … [and] may accept, reject, or modify the recommended disposition …."  Fed. R. Civ. P. 72(b)(3).  Thus, the District Judge is not required to review *de novo* every issue raised in the original motion or habeas petition, but only those matters from the Report and Recommendation that received proper objections.  *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).

### B.  Federal Habeas Corpus Review

In order for the federal courts to consider a petition for writ of habeas corpus, the petitioner must be subject to a state court judgment that is alleged to be "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The petitioner must also have exhausted any available state court remedies, such as the state appeals process.  28 U.S.C. § 2254(b).

In reviewing a habeas petition, the federal court must presume that the state court's determination of the facts is correct, unless the petitioner shows otherwise by clear and convincing evidence. 28 U.S.C. § 2254(e). Additionally, <u>the federal court cannot overturn a state criminal conviction unless: (1) the state court unreasonably applied United States Supreme Court precedent; or (2) the conviction turned on unreasonable factual findings</u>. *See Stewart v. Trierweiler*, 867 F.3d 633, 636 (6th Cir. 2017) (citing 28 U.S.C. § 2554(d)).

In other words, federal law specifically limits this Court's authority to grant relief in a habeas case unless the state court's judgment:

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Apart from these two exceptions, "[b]y its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

Moreover, it is "well settled that the fact that constitutional error occurred in the proceedings that led to a state-court conviction may not alone be sufficient reason for concluding that a [petitioner] is entitled to the remedy of habeas." *Williams v. Taylor*, 529 U.S. 362, 375 (2000) (collecting cases). However, "<u>errors that undermine

confidence in the fundamental fairness of the state adjudication certainly justify the issuance of the federal writ." *Id.* (emphasis added).

## III. ANALYSIS

This District Judge's role is now to review the Report and Recommendation, and, specifically, to review *de novo* all objections properly raised by the parties. Accordingly, the Court will address each of Petitioner's and Respondents' objections in turn.

### A. Petitioner's Objections

Petitioner raises five objections to the Report and Recommendation. (Doc. 47). Each of the five objections focuses exclusively on Ground One of her petition. (*Id.*) Petitioner further makes vague reference to Grounds Two and Three. (Doc. 47 at 1, n.1). However, as explained fully in Section III(A)(2) of this Order, *infra*, these references do not constitute a proper objection.

#### 1. Ground One

In Ground One of her petition, Hunter asserts that she was denied her Fifth and Fourteenth Amendment rights to due process, "resulting from extensive prosecutorial misconduct," *i.e.*, fifty-one improper comments made by the special prosecutor during the State's closing rebuttal argument. (Doc. 1 at 3–5 and Ex. A).

The Magistrate Judge recommends denying Ground One, concluding that "[the improper comments by the prosecutor] did not deprive petitioner of a fair trial and, in any event, did not have a substantial and injurious effect or influence in determining the jury's verdict of guilt with respect to [Count 6, of which Hunter was convicted]." (Doc. 41 at 48).

Petitioner raises five objections to the Magistrate Judge's recommendation, including:

- a. "The Magistrate Judge erred in rejecting petitioner's argument that 2254(d)(2) required *de novo* review" ("Objection A") (Doc. 47 at 10–14);

- b. "The Magistrate Judge erred in applying the Invited Response Doctrine" ("Objection B") (*id*. at 14–28);

- c. "The Magistrate Judge erred by concluding that the trial judge's instruction — "What the Lawyers Say in Closing Is Not Evidence" — cured the harm" ("Objection C") (*id*. at 28–32);

- d. "The Magistrate Judge erred by concluding that the jury's deadlock on eight of the counts indicates that the prosecutor's misconduct did not sway the jury to convict" ("Objection D") (*id*. at 32–37); and

- e. "The Magistrate Judge erred by finding that the state's evidence was 'strong and substantial'" ("Objection E") (*id*. at 37–41).

The Court will address each objection in turn.

a. <u>Objection A</u>: 28 U.S.C. § 2254(d)(2) and *de novo* Review

Petitioner first argues that, as to her claims of improper comments during the prosecutor's rebuttal closing, "[t]he magistrate judge erred in rejecting petitioner's argument that 2254(d)(2) required *de novo* review." (Doc. 47 at 10–14). It bears noting, however, that **the Magistrate Judge <u>did</u> ultimately review the Petitioner's claim *de novo***, erring on the side of caution in light of potentially ambiguous Sixth Circuit precedent on whether the state court of appeals' plain error review of the prosecutorial

misconduct claim amounted to a decision "on the merits."  (Doc. 41 at 18–20).[4]
Therefore, Petitioner's objection is not actually that the Magistrate Judge applied an
incorrect standard, but rather that the Magistrate Judge applied the right standard for the
wrong reason.

More specifically, Hunter argues that the state appellate court made an
unreasonable determination of the <u>facts</u> in finding that petitioner "waived all but plain
error," with respect to her prosecutorial misconduct claim.  (Doc. 47 at 11).  In support,
Hunter states that:

> Contrary to the First District's finding, the record demonstrates
> that defense counsel objected sixteen times during the special
> prosecutor's rebuttal closing, including to the most
> inflammatory statements the special prosecutor made.
> Accordingly, petitioner argued in her reply that the First
> District's finding that she "waived all but plain error" was an
> unreasonable determination of the facts, thus justifying de
> novo review under 2254(d)(2).

(Doc. 47 at 11).

As an initial matter, of the fifty-one comments identified by Petitioner, her trial
attorney only actually objected during trial to sixteen of the comments.  Thus, even if the

---

[4] In *Parker v. Matthews*, the United States Supreme Court considered the question of whether
"certain remarks made by the prosecutor during his closing argument constituted a denial of due
process."  567 U.S. 37, 45 (2012).  The Supreme Court held that "[the] claim was rejected on the
merits by the Kentucky Supreme Court (albeit <u>without analysis</u>) and therefore receives
deferential review under the AEDPA standard."  *Id.* (emphasis added) (citing *Harrington*, 562
U.S. at 98-99) ("There is no text in [§ 2254(d)] requiring a statement of reasons. … [W]hether a
state court's decision resulted from an unreasonable legal or factual conclusion does not require
that there be an opinion from the state court explaining the state court's reasoning").  Given that
'no analysis' can constitute a decision on the merits, it seems counterintuitive for this Court to
hold that 'plain error review' cannot.  Regardless, the Court intends to err on the side of caution
and apply *de novo* review.

state appellate court erroneously applied plain error review based on an unreasonable application of the facts (*i.e.*, erroneously concluding that defense counsel did not object to any of the remarks during closing rebuttal), the error would at best affect only those sixteen instances. However, **upon review of the issue *de novo*** — as the Report and Recommendation suggests, and as this Court finds, *infra* — the special prosecutor's comments do not rise to the level of a constitutional violation. Therefore, even assuming that the state appellate court erred in applying a plain error standard, this Court finds any such alleged error to be harmless.

Moreover, this Court disagrees with Petitioner's characterization of the objections and rejects Petitioner's argument that "the First District's finding that she 'waived all but plain error' was an unreasonable determination of the facts." (Doc. 47 at 11). Although Petitioner is correct in asserting that her trial attorney repeatedly objected during the special prosecutor's rebuttal closing argument, those objections were specific — *e.g.*, relevance of a certain comment, facts not in evidence, the defense carries no burden, *etc*. In response to those objections, the trial judge repeated curative instructions to the jurors. Defense counsel never objected to the sufficiency of those curative instructions.

Hunter's trial attorney never asserted, either during or after the closing rebuttal, that the special prosecutor's comments had prejudiced the jury such that it amounted to a violation of due process or warranted a mistrial. And, to be clear, defense counsel had ample opportunity to raise such concerns if he so intended. Indeed, the state's closing rebuttal was approximately four-hours long, and took place over the course of two days (*i.e.*, three hours in the afternoon and one hour the following morning). Frankly, in that

time frame, defense counsel could have prepared a formal, written motion for a mistrial in the evening and had it filed before the state's closing rebuttal was even complete. Alternatively, defense counsel could have, with minimal effort, lodged his objection orally, outside of the jury's presence, either at side bar, in the afternoon after the first three hours of the closing rebuttal, in the morning before the special prosecutor resumed the closing rebuttal, at the end of closing arguments, or at any point during the two days that the jury deliberated before returning its first (and only) verdict.

In short, Hunter's trial counsel's objections, although numerous, did not substantively preserve the constitutional issue for appeal. Thus, even as a matter of fact, this Court finds no error in the state appellate court's determination that Hunter had waived all but plain error as to prosecutorial misconduct regarding any of the fifty-one comments.

Accordingly, Petitioner's Objection A is overruled.

b. Objection B: Applicability of the Invited Response Doctrine

Next, Petitioner objects to the Magistrate Judge's application of the Invited Response Doctrine. (Doc. 47 at 14–28).

Specifically, the Magistrate Judge concluded that four statements made by the special prosecutor "directed at attacking [Hunter's] character and conduct as a juvenile court judge were improper [and] … inflammatory[,] and thus had a tendency to mislead the jury." (Doc. 41 at 27). However, the Magistrate Judge ultimately concluded that the statements did not warrant habeas relief, because, among other reasons, "as the Ohio Court of Appeals also generally found …, the challenged remarks were 'invited'

responses to the many hyperbolic statements that defense counsel made in his own opening statement and closing argument." (*Id.*)

Petitioner agrees with the Magistrate Judge's conclusion that the statements were improper, but objects to the application of the Invited Response Doctrine. Petitioner argues that "none of the four statements the magistrate judge found inflammatory or improper can fairly be construed to have been made in response to defense arguments." (Doc. 47 at 16).

When determining whether "certain remarks made by the prosecutor during his closing argument constitute[] a denial of due process," the United States Supreme Court instructs that "[t]he 'clearly established Federal law' relevant … is [its] decision in *Darden v. Wainwright,* 477 U.S. 168 (1986)." *Parker*, 567 U.S. 37, 45.

As *Darden* explains, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." 477 U.S. at 181. Rather, "a prosecutor's improper comments will be held to violate the Constitution <u>only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.</u>'" *Id.* (emphasis added) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)).

To determine whether a prosecutor's improper remarks were sufficiently prejudicial to undermine a defendant's right to a fair trial, "the reviewing court must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo." *United States v. Young*, 470 U.S. 1, 12 (1985). In other words, "if the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a

conviction." *Id.* at 12–13. To be clear, "the idea of 'invited response' is used not to excuse improper comments, but to determine their effect on the trial as a whole." *Darden*, 477 U.S. at 182 (holding that the prosecutor's closing statement was improper but not sufficiently prejudicial to jeopardize the defendant's right to a fair trial because "[m]uch of the objectionable content was invited by or was responsive to the opening summation of the defense").

Here, the Court agrees that the remarks objected to by Petitioner were invited by her trial attorney's hyperbolic arguments made at trial.

The prosecutor's first two challenged remarks, insinuating that petitioner's delay in ruling on cases posed a danger to children placed in homes where sexual abuse was occurring, constituted direct responses to defense counsel's extensive attack on the allegedly vindictive motives of the Hamilton County Prosecutor and the Hamilton County Public Defender.

Specifically, in responding to defense counsel's claims that Hamilton County Prosecutor Joe Deters was vindictive and motivated by politics to seek Petitioner's ouster from the juvenile court bench, the special prosecutor presented an alternative view of the county prosecutor's actions and motivations. He discussed the role of the county prosecutor, whose obligations include the protection and removal of children from homes where they are physically and sexually abused and whose duty it is to aggressively prosecute those who would do harm to these children. (*See* Trial Tr. 3812–15, at PAGEID#: 4515–19). The special prosecutor's comment about Deters' inability to remove children from sexually abusive homes due to Petitioner's delayed rulings was

made in this context and in response to the defense's theory of Deters' improper political motivation. The comments were therefore invited and served to "right the scale." (*See id.*; *Young*, 470 U.S. at 12).

Additionally, the special prosecutor's statement about Petitioner's delays in entering final appealable orders, and the impact on children living in homes where there is sexual abuse, was made in response to the defense's argument that the Hamilton County Public Defender's actions against Petitioner were motivated by politics and partisanship and not by any legitimate reason. (*See* Trial Tr. 3857, at PAGEID#: 4560). Specifically, Hunter's trial counsel devoted a substantial part of his arguments to impugning the conduct and motives of the Hamilton County Public Defender, Raymond Faller. Petitioner's trial counsel repeatedly portrayed Faller as a "partisan" state witness who had acted unfairly and with political motivation in filing complaints against Petitioner for delaying rulings. (*See* Trial Tr. 915, 3670–83, at PAGEID#: 1618, 4373–86). And Hunter's trial counsel emphasized that before Faller filed the lawsuits, Hunter had provided him with "meritorious, legitimate reasons" as to why her cases were pending. (*See* Trial Tr. 3671–74, at PAGEID#: 4374–77). Thus, the special prosecutor's comments were an invited response to defense counsel's assertion that the Public Defender was motivated by politics and not by legitimate reasons.

In the remaining two statements challenged by Petitioner, the special prosecutor made remarks about (1) Petitioner's hiring of a bailiff who had previously "been terminated for beating children," and (2) the violent conduct of six juveniles whose identities Petitioner sought to protect from publication, which led to the lawsuits filed by

the media against Petitioner in her official judicial capacity.  (*Id.*, Trial Tr. 3810, 3861, at PAGEID#: 4513, 4564).

The special prosecutor's challenged remark about Petitioner's bailiff was made in response to statements in defense counsel's opening statement and final argument that Petitioner's actions—including those pertaining to the Hamilton County Youth Center (where the incident occurred that led to her brother's termination as a juvenile corrections officer)—were done out of concern for the juveniles' safety and their welfare.  (*See* Trial Tr. 883-86, 3677, 3733, 3782, at PAGEID#: 1586-89, 4380, 4436, 4485).  The special prosecutor's comment suggesting otherwise was, therefore, invited.

In any event, it is highly doubtful that the jury was misled to convict Petitioner for having an unlawful interest in her brother's employment termination proceedings on the basis of that comment rather than the evidence, particularly given that the trial court responded to defense counsel's objection by giving a proper curative instruction.[5]  Thus, even if the special prosecutor's remarks were not invited, the Court finds that the remarks did not have a substantial and injurious effect on Petitioner's conviction given the trial court's repeated curative instructions.  *See Donnelly*, 416 U.S. at 644; *United States v. Warshak*, 631 F.3d 266, 306 (6th Cir. 2010); *United States v. Roberts*, 986 F.2d 1026,

---

[5] The Court's curative instruction stated: "What counsel says in closing argument is not evidence.  The evidence that you will decide this case is what you heard from the mouths of witnesses on the witness stand, plus the exhibits. You could make reasonable inferences based upon what the evidence is.  You are the sole determiner of the evidence so I will let you determine whether or not you can make reasonable inferences based upon what the evidence is." (*See, e.g.*, Trial Transcript 3856, at PAGEID#: 4560).

1031 (6th Cir. 1993). Any potential prejudice from the special prosecutor's remarks was dispelled by the trial court's repeated curative instructions.

Finally, the remark about the six juveniles was made during the course of the special prosecutor's rebuttal argument. The special prosecutor responded to the defense's position that the charges were "politically motivated" and vindictive because Petitioner had taken certain actions as a juvenile court judge that alienated "high-ranking" and "influential people" in Hamilton County, including representatives of the news media who sued petitioner for restricting access to her courtroom. (*See* Trial Tr. 869, 3807–10, at PAGEID#: 1572, 4510–13). Petitioner's trial attorney, in his opening statement, asserted that Petitioner's actions with regard to the media was in an effort "to protect children and develop children positively," by refusing to permit the publication of juveniles' names "under any circumstances." (*See* Trial Tr. 887, at PAGEID#: 1590). Hunter's trial attorney further impugned the motives of the media in filing suit to obtain the names of the juveniles, arguing that it was not because the "crimes were so egregious that [the media] want[ed] to protect the public," but "because [they] want to sell papers." (*See id.*).

Defense counsel's comments about the political nature of the charges against Petitioner, and the motive of the media in filing suit against Petitioner, opened the door for the special prosecutor's remarks and lessened the effect that the statement had on the jury's ability to evaluate the evidence fairly. And, again, any potential prejudice from the special prosecutor's remarks was properly dispelled by the trial court's curative instructions.

The Court reiterates that the question here is not whether these four comments were improper, but rather, <u>when considered in the context of the trial as a whole</u>, whether the comments "so infected [Hunter's] trial with unfairness" to rise to the level of a denial of due process warranting reversal of her conviction. *See Darden*, 477 U.S. at 181. Simply stated, they did not. Indeed, the prosecutor's comments in *Darden* were far more inflammatory than the special prosecutor's conduct in Hunter's case, yet the Supreme Court held:

> Prosecutor McDaniel made several offensive comments reflecting an emotional reaction to the case. These comments undoubtedly were improper. But as both the District Court and the original Panel of the Court of Appeals … recognized, it "is not enough that the prosecutor's remarks were undesirable or even universally condemned." The relevant question is whether the prosecutor's remarks "so infected the trial with unfairness to make the resulting conviction a denial of due process."
>
> …
>
> We agree with the District Court below that "Darden's trial was not perfect—few are—but neither was it fundamentally unfair."

*Darden*, 477 U.S. at 180-83 (internal citations omitted).

Here, as reflected in the Report and Recommendation, the four comments made by the special prosecutor at issue, in a vacuum, were improper. However, viewed in context, the comments did nothing more than "right the scales'" and were not sufficient to prejudice Petitioner's right to a fair trial, particularly given the contentious and inflammatory nature of the rhetoric from counsel for both sides throughout the trial. *See Darden*, 477 U.S. at 181.

Accordingly, Petitioner's Objection B is overruled.

c. <u>Objection C</u>: The Curative Value of the Trial Judge's Jury Instructions

Petitioner also objects to the Magistrate Judge's determination that the trial judge's corrective jury instructions during closing argument mitigated the prejudicial effect of the special prosecutor's improper statements.  Petitioner claims that the remarks made by the special prosecutor were so prejudicial that the straightforward instructions given by the trial judge after each objection ("what the lawyers say in argument is not evidence") were insufficient to cure the remarks' prejudicial effect on the jury.  The objections cite the Sixth Circuit's opinion in *United States v. Solivan* for the proposition that "[t]here are instances where a 'single misstep' on the part of the prosecutor may be so destructive of the right to a fair trial that reversal is mandated."  937 F.2d 1146, 1150 (6th Cir. 1991).[6]

While Petitioner's recitation of the statement in *United States v. Solivan* is an accurate statement of the law, the facts in Hunter's case do not support a finding that such a misstep occurred in her trial.  Moreover, the Sixth Circuit in *Solivan* stated that when evaluating the corrective nature of a jury instruction in the face of prejudicial statements by counsel, "[w]e examine the curative effect, if any, of the cautionary instruction to the

---

[6] Petitioner's citation to Sixth Circuit case law is not helpful.  As "[t]he Supreme Court has reminded us countless times [ ] 'circuit precedent does not constitute 'clearly established federal law'" and "therefore cannot form the basis for habeas relief …." *Stewart*, 867 F.3d at 641(quoting *Parker*, 567 U.S. at 48–49).

jury in the light of the degree and effect of the prejudice." *Id.* at 1156; *see also Darden*, 477 U.S. at 182.

In Hunter's case, the prejudicial value of the four statements made by the special prosecutor at issue here was low considering the context of the highly charged courtroom proceedings. Indeed, in this context, the trial judge's repeated instruction**s**, that "what the lawyers say in argument is not evidence," were sufficient to mitigate the remarks' inflammatory impact on the jury and protect Petitioner's right to a fair trial. *See Darden, supra* ("The trial court instructed the jurors several times … that the arguments of counsel were not evidence."); *see also Stewart*, 867 F.3d at 639–41 (citing *Darden* and finding that the trial judge's curative instructions mitigated otherwise arguably improper rhetoric from the prosecution in a case where both sides had engaged in "excessive theatrics").

Accordingly, Petitioner's Objection C is overruled.

    d.  <u>Objection D</u>:  The Probative Value of the Jury's Deadlocking on Eight Additional Charges Raised Against Petitioner

In the Report and Recommendation, the Magistrate Judge included the following sentence:

> Indeed, the fact that the jury did not convict petitioner on the eight other charges against her militates against a finding that the special prosecutor's remark inflamed the jury against petitioner or prejudicially affected the jury in reaching its guilty verdict on the one charge contained in Count 6.

(Doc. 41 at 32).

This sentence, ending a long paragraph that was more substantively discussing the sufficiency of the trial judge's corrective jury instructions in light of relevant case law, is the only portion of the Report and Recommendation that references the deadlocked charges against Petitioner in relation to the special prosecutor's statements during closing argument. Nevertheless, Petitioner's objections dedicate six pages to disputing this assertion, and in doing so, improperly attempt to re-litigate the evidence surrounding the eight counts on which Petitioner's trial jury deadlocked.

The essence of Petitioner's Objection D is that the jury's hanging on eight counts is not evidence that there was no prejudice against Petitioner—rather the hung jury is in fact evidence that there *was* prejudice against Petitioner, because the evidence supporting those counts was so weak that an unbiased jury would have found Petitioner not guilty on all counts.

Petitioner's objection is not well-taken. Instead, this Court agrees with the Magistrate Judge's assessment. The fact that the jury did not convict Petitioner on the eight other charges against her militates against a finding that the special prosecutor's remarks inflamed the jury against Petitioner or prejudicially affected the jury in reaching its sole guilty verdict on the one charge contained in Count 6.

Regardless, however, the jury's failure to reach a verdict on eight of the counts against Petitioner is not a significant factor in this Court's analysis of the four remarks at issue nor in the analysis of the Report and Recommendation. The factors which actually impact this Court's ruling are discussed at length throughout this Order.

Accordingly, Petitioner's Objection D is overruled.

e. <u>Objection E</u>:  The Strength of the Evidence in Support of
Petitioner's Conviction for Having an Unlawful
Interest in a Public Contract

Lastly, Petitioner objects to the Magistrate Judge's conclusion that any prejudicial weight of the special prosecutor's improper statements during closing argument was undermined and outweighed by the strong and substantial evidence supporting the count on which Petitioner was found guilty (Count 6 of the indictment charging Petitioner with having an unlawful interest in a public contract).  Specifically, Petitioner argues that "the evidence on Count 6 was thin and arguably should have resulted in acquittal."  (Doc. 47 at 37).

Having reviewed the issue *de novo*, this Court wholly adopts the Report and Recommendation's detailed analysis of the evidence supporting the jury's verdict on Count 6 and need not duplicate it in this Order.  (*See* Doc. 41 at 32–37)

Nevertheless, in summary as to this objection, the evidence at trial that Hunter had delivered to her brother documents to which he was not entitled for the purpose of protecting his employment as a Juvenile Correctional Officer at the Hamilton County Youth Center, as well as the testimony regarding Hunter's additional conduct intervening on her brother's behalf, strongly supports the jury's verdict that Hunter was guilty of having an unlawful interest in a public contract.  This <u>strong evidence</u> supporting the jury's verdict on Count 6 undermines Petitioner's claim that the verdict was a result of the inflammatory and prejudicial effect of remarks made by the special prosecutor during closing argument.  And that is precisely what the Supreme Court found

in *Darden*, 477 U.S. at 182: "The weight of the evidence against Petitioner was heavy …

and reduced the likelihood that the jury's decision was influenced by argument."

Accordingly, Petitioner's Objection E is overruled.

### 2. *Grounds Two and Three*

As previously stated, all of Petitioner's objections to the Report and

Recommendation are focused exclusively on Ground One.  However, Petitioner's

objections include a footnote stating that: "For purposes of preserving the issues for

possible future appellate review, petitioner incorporates herein the arguments she made in

her petition, reply, and sur-rebuttal in support of the second and third grounds for relief

she asserted in her petition."  (Doc. 47 at 1, n.1).

Such incorporation by reference, however, fails to meet the requirement of

"specific written objections" to the Report and Recommendation.  Fed. R. Civ. P.

72(b)(2) (emphasis added).  "The filing of objections provides the district court with the

opportunity to consider the specific contentions of the parties and to correct any errors

immediately."  *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981) (emphasis

added).  "The filing of vague, general, or conclusory objections does not meet the

requirement of specific objections and is tantamount to a complete failure to object."

*Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001).

Accordingly, the Court finds that Petitioner has failed to file any specific

objections to the Report and Recommendation with regard to Grounds Two and Three.

Thus, any such objections are deemed to be waived.

**B. Respondents' Objections**

Although the Report and Recommendation ultimately recommended that Hunter's petition for writ of habeas corpus should be denied with prejudice, the Magistrate Judge did find that four of the statements made by the special prosecutor during rebuttal closing argument, and directed at attacking Petitioner's character and conduct as a juvenile court judge, were improper. (Doc. 41 at 27). Respondents' objections argue that the Magistrate Judge's findings were incorrect and that no improper statements were made by the special prosecutor during closing arguments. (Doc. 46).

After reviewing the statements in question, the Court concludes that the Report and Recommendation correctly categorized the four statements in question as improper, inflammatory, and deliberately made. The first two remarks highlight the sexual abuse of children as possible consequences of Petitioner's behavior. Respondents assert that the choice to illuminate this specific, hypothetical outcome of Petitioner's alleged failures was "innocuous." (*Id.* at 4). This is patently incorrect. The four comments identified in the Report and Recommendation were clearly inflammatory.

Although Respondents correctly state that a prosecutor is given "wide latitude during closing argument," *United States v. Lawrence*, 735 F.3d 385, 431 (6th Cir. 2013), the special prosecutor's efforts to link Hunter with the visceral imagery of the disturbing hypotheticals presented to the jury was beyond the bounds of professionalism demanded of officers of the court. The Report and Recommendation is therefore correct in its finding that the four statements to which Petitioner objected were improper — although, in context, insufficient to jeopardize Petitioner's right to a fair trial.

Accordingly, Respondents' objections to the Report and Recommendation (Doc. 46) are overruled.

## IV. CONCLUSION

For the foregoing reasons:

1. The Report and Recommendation (Doc. 41) is **ADOPTED** in its entirety;[7]

2. Petitioner's objections (Doc. 47) and Respondents' objections (Doc. 46) are **OVERRULED**;

3. Petitioner's improperly filed *pro se* motion to file additional objections to the Report and Recommendation is **STRICKEN**, thereby **GRANTING** Respondents' motion to strike (Doc. 57);

4. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED** with prejudice and **DISMISSED**;

5. A certificate of appealability under 28 U.S.C. § 2253 is **GRANTED** only with respect to the prosecutorial misconduct claims in Ground One, which were addressed on the merits here, challenging the prosecutor's remarks during rebuttal closing argument that were objected to at trial (*see* Doc. 41 at 66–67). A certificate of appealability is **DENIED** as to all other claims;

6. With respect to any application by Petitioner to proceed on appeal *in forma pauperis,* the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of the Order adopting this Report and Recommendation, with respect to the prosecutorial misconduct claims in Ground One, which were addressed on the merits here, challenging the prosecutor's remarks during rebuttal closing argument that were objected to at trial, would be taken in "good faith," and, therefore, **GRANTS** Petitioner leave to appeal *in forma pauperis,* as to this issue, upon a showing of financial necessity;

---

[7] A full copy of the comprehensive Report and Recommendation that this Judge adopts in its entirety, as if fully re-written herein, is attached to this Decision and Entry as Exhibit A.

7. The Court's prior Order Granting Petitioner's Emergency Motion for Stay of Execution of Sentence (Doc. 4) is hereby set aside and **VACATED**; and

8. The Clerk shall enter judgment accordingly, whereupon this case is **TERMINATED** on the docket of this Court.

**IT IS SO ORDERED.**

Date:     5/29/19

Timothy S. Black
United States District Judge